NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
FILED
JUN 29 2005
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-164-KSF

BARBARA SARABIA                                                                                    PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

FAYETTE COUNTY DETENTION CENTER, ET AL.                                DEFENDANTS

Barbara Sarabia, an individual presently confined in the Fayette County Detention Center ("the FCDC") in Lexington, Kentucky, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. §1983, together with an application to proceed *in forma pauperis*. The Court will address the motion to proceed *in forma pauperis* by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See*

*Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

CLAIMS
1. Complaint [Record No. 1]

The plaintiff has filed a two-page handwritten complaint on legal-sized paper. The complaint and subsequent filings are difficult to comprehend. In her complaint, the plaintiff appears to assert three separate claims. First, the plaintiff alleges that on February 25, 2005, during second shift Captain Simpson and Officers Rudd and Maham withheld her food, which consists of a special diet tray required for an undisclosed medical condition. This claim would fall under the Eighth Amendment's prohibition against cruel and unusual punishment.

Second, she alleges that when she found a $20.00 bill on the floor at the FCDC and turned it in, Officer Rudd screamed at her, put her in lockdown for three days, and charged her with theft and contraband. She also alleges that she was denied telephone privileges. The plaintiff asserts that she was wrongly charged with these offenses. The Court broadly construes this as a due process claim under the Fourteenth Amendment, as applied to state action.

Third, she alleges that she was the victim of retaliation as a result of having filed the grievance against Officer Rudd. She states that on April 4, 2005, she filed a grievance against Officer Rudd, claiming that Rudd had falsely charged her with theft and having contraband. The plaintiff does not clearly identify the individuals whom she claims retaliated against her. It appears that she claims that Captain Simpson and other unspecified jail officers were responsible.[1] She

---

[1] The plaintiff states as follows:

claims that after she filed the grievance against Rudd, she was denied her special food tray for two weeks preceding the filing of the instant complaint. This claim, broadly construed, would fall under the First Amendment of the United States Constitution.

### 2. Attachment to Exhaustion of Remedy Form
### [Record No. 3]

On May 4, 2005, the Court entered a "Deficiency Order" in which it instructed the plaintiff to supplement her complaint with the specific forms attached to the Deficiency Order. Specifically, the Court provided the plaintiff with an *in forma pauperis* form [Form 117] and a form on which to explain what, if any, administrative remedies she had exhausted [Form 118, entitled "Form Regarding Exhaustion of Remedies"].

On May 12, 2005, the plaintiff filed a four-page, handwritten document on lined, yellow legal-sized paper, which she entitled "Form Regarding Exhaustion of Remedies" [Record No. 3]. The submission appears to be a restatement of the Court's preprinted Form 118. The plaintiff handwrote each question contained in the Form 118 on the yellow legal-sized paper and attempted to supply a handwritten response after each written question.

On page one of the submission, the plaintiff appeared to explain her efforts at administrative exhaustion of the specific claims set forth in her complaint. She states in response to handwritten question Nos. 2 and 3 (seeking specifics as to how the grievance was submitted or to whom it was submitted) that she told Inmate Service (an individual she identified only as "Smith") about her

---

Rudd is prejudice and abuses her power to harm me without cause or provolke {sic} by me! Her commander Capt. Simpson agrees with Rudd abuse on me and participates himself in this mental and emotional harm done to me.

Complaint, p. 2 [Record No.1].

3

complaints, and that Smith in turn complained to Captain Kelly. According to the plaintiff, Captain Kelly backed Officer Rudd's decision to charge the plaintiff with theft and possession of contraband.

On page two of the submission, under the heading of "Attached Answers," the plaintiff set forth a detailed response spanning three single-spaced pages. Summarized, the plaintiff complained about the disciplinary treatment she received after turning in the $20.00 bill, including but not limited to the denial of her dietary food tray and phone privileges; the retaliation she experienced as a result of filing the grievance against Officer Rudd; the denial of a due process hearing in connection with the grievance she filed against Rudd. She states that an FCDC Officer by the name of James Krammer believed that she (plaintiff) had been excessively charged as a result of the return of the $20.00 bill and took the matter to Major Hill of the 2nd shift.

On page four of the submission, the plaintiff raised additional claims not set forth in her original complaint.[2] First, the plaintiff alleges that on an unspecified date, she slipped and fell on a puddle of water in the FCDC and hurt her knee. She alleges that she was denied adequate medical treatment, in violation of the Eighth Amendment. Second, she alleges that FCDC officers are generally abusive, unkind and unfeeling. The Court construes that claim as one falling under the Eighth Amendment. Third, she alleges that on May 5, 2005, the "First Shift" gave one group of inmates in lockdown extra food trays, while the group with whom the plaintiff was in lockdown did not receive extra food. Fourth, she complains that the FCDC engages in retaliatory practices when inmates file grievances. She alleges that personnel from Inmate Services have in the past asked her if she had ever experienced brain damage.

---

[2] To that extent, the Court construes pages 2-4 of the May 12, 2005 submission as an amendment to the original complaint.

4

## NAMED DEFENDANTS

The plaintiff names the following two defendants: (1) the Fayette County Government and (2) the Fayette County Detention Center.

## RELIEF REQUESTED

In her complaint, the plaintiff did not seek any specific relief. In her May 12, 2005 submission, the plaintiff states that she is seeking "$150.00" for her pain and suffering [Record No. 3, page 4].[3]

## DISCUSSION

There are two reasons why this action must be dismissed. The Court will discuss each reason.

### 1. "Total Exhaustion" Rule

The plaintiff's May 12, 2005 submission purports, at first blush, to be a statement regarding her efforts to administratively exhaust the specific claims set forth in her original complaint. The plaintiff, however, asserts several new Eighth and First Amendment claims in her May 12, 2005 submission, which the Court has construed as an amended complaint. While the plaintiff used that submission to assert new claims not included in her original complaint, she did not set forth if, or how, she administratively exhausted the newly asserted claims. Under the "total exhaustion" rule of this circuit, the plaintiff's failure to exhaust the claims in the construed amended complaint requires the *entire* action to be dismissed without prejudice.

The Prison Litigation Reform Act of 1995 ("PLRA), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison

---

[3] It is not clear whether the plaintiff actually seeks only "$150.00" in monetary damages or whether she seeks "$150,000.00" in damages.

5

life, such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement, citing *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819 (2001). The Sixth Circuit, of which this Court is a part, follows the "total exhaustion" rule. This rule requires district courts to dismiss without prejudice a mixed complaint ( alleging both exhausted and unexhausted claims) for failure to exhaust administrative remedies whenever there is a single unexhausted claim, despite the presence of other exhausted claims. *See Bey v. Johnson*, 407 F.3d 806 (6th Cir. 2005) ("We now join the Tenth and Eighth Circuits in holding that total exhaustion is required under the PLRA.").

## 2. *Monell* Doctrine

Even had the plaintiff demonstrated that she had administratively exhausted all of her claims, they would still suffer from another fatal defect. The plaintiff alleges that Officer Rudd, Captain Kelly, and other unidentified officers violated various constitutional provisions. To the extent that the plaintiff seeks recovery from the FCDC and Fayette County, her claims fail, because a municipality cannot be held liable under the theory of *respondeat superior*. *See Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L. Ed.2d 626 (1997). To prevail on a claim of city liability under §1983, a plaintiff must establish: 1) deprivation of a constitutional right; 2) that the city had a policy or custom; and 3) that the city was the moving force behind the constitutional violation. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L. Ed.2d 611 (1978). None of these are pled here.

The language of §1983 does not create municipal liability "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) citing *Monell* 436 U.S. at 691. Additionally, "a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Id*; *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997) ("While a municipality may be held liable under 42 U.S.C. §1983 for a constitutional violation directly attributable to it, §1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees."); *Swanson v. Livingston County*, 121 Fed.Appx. 80, 85, 2005 WL 95737, **5 (6th Cir.(Mich.) January 19, 2005) (not selected for publication in the Federal Reporter) ("Also unavailing is Swanson's §1983 claim alleging that the County discriminates on the basis of gender in its hiring and promotion decisions--first and foremost because she has not identified any custom, policy, or practice of sexual harassment on the part of Livingston County. *See Monell v. Dep't of Social Servs. of City of New York* (citation omitted).").

The plaintiff has not alleged that Fayette County had a policy or custom which violated her constitutional rights; or that Fayette County was the moving force behind the alleged constitutional violations. She has alleged only that various individuals engaged in activity which violated her First, Eighth, and Fourteenth Amendment rights. In light of that, the complaint fails to state a claim against the named defendants, and the complaint against them must be dismissed with prejudice.

## CONCLUSION

Accordingly, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the defendants.

This the 28th day of June, 2005.

KARL S. FORESTER, SENIOR JUDGE